IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIE MARTINEZ, AND ALBERTA WILLERS,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ANTELOPE, NEBRASKA,<br><br>Defendant. | 4:15CV3064<br><br>**MEMORANDUM AND ORDER** |

During a hearing held on March 24, 2016, the court granted Defendant's Motion to Stay Depositions Pending Resolution of Motion to Disqualify Plaintiffs' Counsel, ([Filing No. 34](#)), and as to Defendant's motion to compel, ([Filing No. 43](#)), it further ruled that Plaintiffs must provide a computation of damages as required under Rule 26 (1)(a)(iii). The court has not yet ruled on Defendant's motion to compel, ([Filing No. 50](#)) because, as explained below, that motion is related to Defendant's Motion To Disqualify Plaintiffs' Counsel, ([Filing No. 34](#)).

This memorandum and order discusses the motion to disqualify. For the reasons stated below, the court finds the motion must be granted.[1] Defendant's motion to compel will be denied without prejudice to re-filing after new counsel enters an appearance on Plaintiffs' behalf, or the Plaintiffs advise the court of their intent to pursue this case without counsel.

---

[1] To avoid any actual or perceived conflict of interest, my career law clerk, Bren Chambers, was not involved in analyzing the pending motions, or in drafting and reviewing this order.

BACKGROUND

Antelope County is a member of the Nebraska Intergovernmental Risk Management Association ("NIRMA"). NIRMA is a not-for-profit, member-owned and operated risk management and self-insurance pool. Its goal is to provide cost-effective and comprehensive coverages and risk management services to its members, including legal counseling services.

NIRMA member counties and their elected or incoming officials can call NIRMA's toll-free hotline to speak with a NIRMA attorney regarding legal questions on labor, employment, and human resource topics. The NIRMA hotline may be used only by (1) elected or incoming officials of NIRMA member counties; and (2) authorized representatives of public agencies that are also members of NIRMA. Calls can be made regarding only the county's legal questions: The NIRMA hotline cannot be used for a county official's personal legal questions or any questions that are unrelated to county business. Pam Bourne, an attorney with Woods & Aitken LLP, has provided legal counseling services for NIRMA's member counties for around 12 years, including the years at issue in this case. She has been counsel of record for the defendant from the outset of the above-captioned litigation. ([Filing No. 5](#)).

Antelope County, Nebraska has been a NIRMA member since at least January 15, 1989. Heather McWhorter was the Antelope County Assessor in 2014. As an elected county official and on behalf of Antelope County, McWhorter used the NIRMA hotline on numerous occasions to ask Bourne for legal advice. ([Filing No. 55-1, at CM/ECF p. 2, ¶¶ 5-6](#)).

In the Fall of 2014, McWhorter ran for reelection and lost to Kelly Mueller. After the election, but while she was still the County Assessor, McWhorter called the NIRMA

Hotline on the county's behalf to obtain legal advice on employment issues. On December 2, 2014, at 9:50 a.m., McWhorter left a voicemail on Bourne's telephone, stating, "Hi Pam this Heather McWhorter in Antelope County. I have a question as far as the incoming assessor and me going outgoing and some of the rights and responsibilities there. My Board has asked me to call and verify some stuff with you." (Filing No. 55-1, at CM/ECF p. 2, ¶ 9). The following day, on December 3, 2014, at 2:00 p.m., McWhorter left another voicemail on Bourne's telephone, stating, "Hi Pam. This Heather McWhorter again, um, I need you to return my call so we can ask about a liability question with the County . . . ." (Filing No. 55-1, at CM/ECF p. 2, ¶ 10). Bourne returned McWhorter's call later that same day, spoke with McWhorter, and provided the legal advice McWhorter had sought at the direction of the County's Board of Supervisors. (Filing No. 55-1, at CM/ECF p. 2, ¶ 11).

Plaintiff Jennifer Martinez also contacted Bourne, but Bourne refused to speak with Martinez, explaining she represents the County and cannot provide personal legal advice to County employees. (Filing No. 55-1, at CM/ECF p. 2, ¶ 12).

Antelope County never authorized McWhorter to reveal communications she had with Bourne or any other attorney on Antelope County's behalf.

McWhorter has not worked for Antelope County since Mueller took over as County Assessor in January of 2015. On January 10, 2015, Kathleen Neary, Plaintiffs' counsel in this lawsuit, received a call from Plaintiff Martinez. Neary created notes of her conversation with Martinez. While the notes "are cryptic," Neary understands what they mean when she reads them.[2] (Filing No. 37-1, at CM/ECF p. 2, ¶ 6). According to Martinez, two weeks before Mueller was sworn into office, Mueller told Martinez that

---

[2] Comparing the notes to Neary's affidavit, it is clear the notes refresh Neary's recollection, but they state far less than Neary remembers.

she must reapply for her job. McWhorter told Martinez that she (McWhorter) had contacted NIMRA about the legality of that requirement. ([Filing No. 37-1, at CM/ECF p. 2, ¶ 7-8](#)). In her conversation with Neary, Martinez stated she did not know who McWhorter spoke to at NIMRA.

Before filing Plaintiffs' Complaint, Neary contacted McWhorter. When she spoke with McWhorter, Neary asked for the name of the NIRMA employee McWhorter spoke to, but McWhorter could not remember the name. McWhorter did explain the conversation with the NIRMA contact. McWhorter told Neary that according to the NIMRA contact, NIMRA had talked to both Mueller and the County Attorney regarding the employment issues in this case and had provided advice on those issues. ([Filing No. 37-1, at CM/ECF p. 4, ¶ 14](#); [Filing No. 37-3, at CM/ECF p. 2](#)).

In January of 2016 (after the Complaint was filed) Martinez told Neary that in further conversations between Martinez and McWhorter, McWhorter further repeated the specifics of the NIMRA phone call and identified the "NIRMA employee" as attorney Pam Bourne. ([Filing No. 37-1, at CM/ECF p. 4-5, ¶ 15](#)). Without question, the information provided by McWhorter to Martinez, and in turn to Neary, included legal advice Bourne provided to Mueller and the Antelope County Attorney. ([Filing No. 37-1, at CM/ECF p. 5, ¶ 16](#)).[3]

---

[3] Defendant's counsel demanded to see the sealed documents filed by Neary. During the conference call with the court, the court warned that reviewing Neary's attorney-client communications may disqualify defense counsel as well. Following that hearing, Neary delivered her handwritten notes of her conversations with McWhorter and Martinez, to defense counsel. Heeding the court's warning, defense counsel refused to review those notes.

While the court certainly understands defense counsel's concern with responding to evidence in a vacuum, the court is also concerned with disclosing the sealed documents. Upon review of Neary's affidavit and the attached documents, it is difficult to parse the legal advice provided by Bourne to Antelope County from the attorney-client communications between Plaintiffs and Neary. Unsealing the evidence filed by Neary will not change the outcome of this motion, but it will perpetuate disclosure of confidential information and possibly prompt Plaintiffs' motion to disqualify defense counsel.

On January 26, 2016, Plaintiffs served the following requests for admission on Defendant:

**Request No. 13.** Admit that Pam Bourne communicated with Heather McWhorter after the 2014 general election regarding Jennie Martinez's employment status with the County.

**Request No. 14.** Admit that Pam Bourne communicated with Heather McWhorter after the 2014 general election regarding Alberta Willer's employment status with the County.

**Request No. 15.** Admit that Heather McWhorter raised concerns with Pam Bourne regarding Jennie Martinez's continued employment with the County after Kelly Mueller had been elected County Assessor.

**Request No. 16.** Admit that Heather McWhorter raised concerns with Pam Bourne regarding Alberta Willers' continued employment with the County after Kelly Mueller had been elected County Assessor.

**Request No. 17.** Admit that after the 2014 general election, Heather McWhorter told Pam Bourne she believed Ms. Mueller would terminate Jennie Martinez's employment with the County because Martinez had supported McWhorter in the 2014 County Assessor's election.

**Request No. 18**. Admit that after the 2014 general election, Heather McWhorter told Pam Bourne she believed Ms. Mueller would terminate Alberta Willers' employment with the County because she had not supported Mueller in the 2014 County Assessor's election.

**Request No. 19.** Admit that Pam Bourne told Heather McWhorter after the 2014 general election that she was going to advise Ms. Mueller to not terminate Ms. Martinez from her employment with the County.

---

The court has reviewed the documents at issue and finds the attorney-client privilege is applicable. The court need not require production of the materials so defense counsel can independently determine the appropriateness of the privilege. See Crutcher-Sanchez v. Cty. of Dakota, Neb., No. 8:09CV288, 2011 WL 612061, at *7 (D. Neb. Feb. 10, 2011); United States v. SAE Civil Const., No. 4:CV95-3058, 1996 WL 148521, at *2 (D. Neb. Jan. 29, 1996) ("[T]he defendants need not prove that any specific confidential information was disclosed.") (Urbom, J.). Plaintiffs' motion to seal, (filing nos. 36 and 51), will be granted.

**Request No. 20.** Admit that Pam Bourne told Heather McWhorter after the 2014 general election that she was going to advise Ms. Mueller to not terminate Ms. Willers from her employment with the County.

**Request No. 21.** Admit that Pam Bourne told Heather McWhorter after the 2014 general election that she was going to advise Ms. Mueller to not terminate Martinez from employment with the County because it was against the law.

**Request No. 22.** Admit that Pam Bourne told Heather McWhorter after the 2014 general election that she was going to advise Ms. Mueller to not terminate Willers from employment with the County because it was against the law.

**Request No. 23.** Admit that during a conversation following the 2014 general election, Ms. Bourne advised Ms. Mueller against separating Ms. Martinez from employment with the County Assessor's office.

**Request No. 24.** Admit that during a conversation following the 2014 general election, Ms. Bourne advised Ms. Mueller against separating Ms. Willers from employment with the County Assessor's office.

**Request No. 26.** Admit Ms. Bourne was acting in the scope and course of her representation of Antelope County, Nebraska when she advised Mueller to not separate Ms. Martinez from employment with the County following the 2014 general election.

**Request No. 27.** Admit Ms. Bourne was acting in the scope and course of her representation of Antelope County, Nebraska when she advised Mueller to not separate Ms. Willers from employment with the County following the 2014 general election.

([Filing No. 37-6, at CM/ECF pp. 2-4](#)). Defendant objected to each of these requests as calling for the attorney-client privileged information.

On January 27, 2016, Plaintiffs served their Third Supplemental and Amended Initial Disclosures and Disclosures of Non-Expert Witnesses which named McWhorter—for the first time—as a potential witness. (See [Filing No. 33-3 at CM/ECF pp. 10–14](#)). Plaintiffs stated McWhorter "may possess information regarding conversations with Pam Bourne regarding potential action of Mueller . . . ." ([Filing No. 37-4, at CM/ECF p. 2](#)).

Plaintiffs also identified Brandi Johnson and Vincent Valentino as potential witnesses. ([Filing No. 37-4, at CM/ECF p. 3](#)). Johnson and Valentino both regularly provide legal services to NIRMA counties,[4] and have served as defense counsel in cases filed by Neary on behalf of Plaintiffs suing a Nebraska County.[5]

On January 29, 2016, Neary contacted Bourne to discuss Bourne's possible conflict with continued representation of Defendant due to McWhorter's waiver of the attorney-client privilege. Bourne declined to answer Neary's questions on the basis of attorney-client privilege, stating McWhorter was not authorized to waiver the County's privilege. ([Filing No. 37-1, at CM/ECF p. 6, ¶ 18](#)). Neary chose not to move to disqualify defense counsel. ([Filing No. 37-1, at CM/ECF p. 6, ¶ 21](#)). But Plaintiffs are moving to compel Defendant's responses to discovery, specifically asking Defendants to admit the content of the legal advice the County received from Bourne. ([Filing No. 50](#)).

On February 8, 2016, Neary served a privilege log described as "Notes by K. Neary of Interview of K. [sic] McWhorter – in possession of plaintiff's counsel." (See [Filing No. 33-3 at CM/ECF p. 15](#)). Shortly thereafter, Defendant's counsel, Erin Ebeler, contacted Neary to determine whether attorney-client protected information was being or had been wrongfully disclosed to Neary by McWhorter. Defense counsel also addressed concerns that Plaintiffs had named Johnson and Valentino—who were known NIRMA

---

[4] Johnson and Valentino are regularly engaged on behalf of NIMRA, Inc., but it is unclear what Plaintiffs believe these attorneys may know that would be relevant in this lawsuit. NIMRA Inc. is a non-profit corporation with employees that provide third-party administrator services to NIRMA and other political subdivisions. Johnson and Valentino had both provided legal counsel to McWhorter and Antelope County in an employment matter during the time that McWhorter was the Antelope County Assessor. ([Filing No. 55-1, at CM/ECF p. 1, ¶¶ 2-4](#)).

[5] Valentino and Johnson have defended several cases filed against NIRMA member counties and/or their employees/officials by Neary and other attorneys at the Powers Law firm, including Wigert v. Webster County (2010); Estate of Schollmeyer v. Valley County (2012); Mcintosh v. Saunders County (2013); and Monthey v. Kearney County (2013). ([Filing No. 55-2, at CM/ECF p. 2, ¶ 8](#)). They have NIMRA email addresses and are commonly referred to by NIRMA member employees/officials as "NIRMA's attorneys." ([Filing No. 55-2, at CM/ECF pp. 3, ¶¶ 13-14](#)).

attorneys—as witnesses. The attorneys were unable to fully resolve their dispute over the attorney-client issues presented in this case.

On February 29, 2016, Bourne contacted McWhorter to determine whether McWhorter had spoken with Neary regarding matters that would be attorney-client privileged communications with the County. McWhorter confirmed that Neary had called to discuss Plaintiffs' claims around a year prior. She could not recall specifics of that conversation, but she admitted she may have talked to Neary about conversations she had with Bourne on the NIRMA hotline. McWhorter confirmed she did not remember speaking to anyone else about these topics.

Defendant now moves to disqualify attorney Neary and the law firm of Vincent M. Powers & Associates from representing Plaintiffs in this matter, arguing Neary violated public policy and governing ethical rules by inquiring into information protected by the attorney-client privilege when interviewing McWhorter in early 2015. The court held a telephonic conference on this issue and strongly encouraged counsel to try to resolve the dispute.

After the conference, defense counsel proposed that the parties at least discuss the following terms to rectify the privilege issues and allow this case to proceed without delay:

1. No information that was obtained from Heather McWhorter, Jennie Martinez, and Alberta Willers regarding any conversations that they or any other official with Antelope County had with Pam Bourne, Joe Abler, Vincent Valentino, or Brandy Johnson shall be used for any purpose whatsoever. No witness shall be questioned about any conversation with Bourne, Abler, Valentino, Johnson, or any other attorney. Further, witnesses shall be expressly admonished that they are not to "volunteer" any such information and that doing so may subject them to contempt of court.

2. Neither Jennie Martinez nor Alberta Willers shall be allowed to proffer evidence regarding statements alleged to have been made to them by McWhorter regarding conversations McWhorter alleges to have had with Bourne, Abler, Valentino, Johnson, any other attorney, or "NIRMA." Additionally, this restriction shall apply to all other third-parties that may be called.

3. Neither Kelly Mueller nor Lisa Payne shall be questioned about any communications she may or may not have had with Bourne, Abler, Valentino, Johnson, or any other attorney regarding this matter. Additionally, this restriction shall apply to all current and former elected officials and employees of the County that may be called.

4. All discovery requests that in any way relate to alleged communications that supposedly occurred between (1) Bourne, Abler, Valentino, or Johnson and (2) Heather McWhorter, Jennie Martinez, or Alberta Willers shall be promptly withdrawn.

5. Plaintiffs' Rule 26 Disclosures shall be amended to remove all references to Bourne, Abler, Valentino, and Johnson. Additionally, Plaintiffs' Rule 26 Disclosures shall be amended to remove all references to any conversations had by Bourne, Abler, Valentino, and Johnson with Heather McWhorter, Jennie Martinez, Alberta Willers, Kelly Mueller, Lisa Payne, or any other current or former elected official or employee of the County.

([Filing No. 65-1, at CM/ECF pp. 6-7](#)).

Plaintiffs' counsel rejected this proposed resolution, stating "our clients certainly have the right to testify to anything that was said to them by anyone. I know of no law that would prevent such testimony." ([Filing No. 65-1, at CM/ECF p. 5](#)). Despite extensive briefing by defense counsel on the motion to disqualify, Plaintiffs' counsel demanded answers to the following questions:

1. What was the violation of the attorney client privilege?

2. How was your client harmed?

3. What law exists that justifies your position that relevant voluntary statements made to an unrepresented citizen by another citizen

9

> should not be allowed into evidence? We still await your legal basis
> for demanding that such evidence be stricken.

(Filing No. 65-1, at CM/ECF p. 2-3). Plaintiffs' counsel claimed defense counsel's "unwillingness to answer these questions lends credence to the concern that this entire exercise has been to gain an advantage in litigation rather than seek a solution." (Filing No. 65-1, at CM/ECF p. 3).

Since the parties cannot resolve the issue, the court must. Defendant's motion to disqualify Plaintiffs' counsel will be granted.

## LEGAL ANALYSIS

The matter of attorney disqualification is within the sound discretion of the court. See Jenkins v. State of Missouri, 931 F.2d 470, 484 (8th Cir. 1991). The party moving to disqualify opposing counsel bears the burden of proving disqualification is an appropriate remedy, with "any legitimate doubts . . . resolved in favor of disqualification." Gifford v. Target Corp., 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010). But decisions to disqualify a party's chosen counsel will be met with "particularly strict scrutiny" due to the potential for abuse. Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007).

When considering motions to disqualify, courts must balance public policy concerns and the court's responsibility to uphold the integrity of judicial proceedings with a party's right to select his or her own counsel. In determining whether to disqualify counsel, a court balances the interests and motivations of the attorneys, the clients, and the public. Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 592 (D.Minn.1986); Arnold v. Cargill Inc., No. 01-2086, 2004 WL 2203410, at *13 (D. Minn. Sept. 24, 2004). Factors considered include a court's "duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial

proceedings," (In re Potash Antitrust Litig., No. CIV. 3-93-197, 1993 WL 543013, at *16 (D. Minn. Dec. 8, 1993); a party's "interest in a trial free from even the risk that confidential information has been unfairly used against it," (Arnold, 2004 WL 2203410, at *5); the "important public right" of a party to select its own counsel, (Macheca Transport Co. v. Philadelphia Indemnity Insurance Co., 463 F.3d 827, 833 (8th Cir.2006); Gifford, 723 F. Supp. 2d at 1117-8); and the relevant rules of professional conduct,[6] although such rules are not controlling. See F.D.I.C. v. U.S. Fire Ins., Co., 50 F.3d 1304, 1314 (5th Cir. 1995); accord United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982) (finding the adopted ethical rules as one of the factors to be considered in supervising the members of its bar).

Having reviewed the facts and arguments of counsel, the court must answer the following questions in deciding Defendant's motion to disqualify.[7]

1)   Was the information McWhorter provided to Neary, either directly or through Plaintiff Martinez, protected attorney-client communications;

2)   Did McWhorter's disclosure of the information (to either Martinez or Neary) waive the privilege; and

3)   Is Plaintiffs' counsel, and Vince Powers and Associates, disqualified from representing Plaintiffs because she received information about McWhorter's conversations with Bourne?

---

[6] The District of Nebraska has not adopted any specific set of ethical guidelines. See NEGenR 1.7(b)(2)(A). However, the court "may consult other codes of professional responsibility or ethics to determine whether a lawyer has engaged in conduct unbecoming of a member of the bar." NEGenR 1.7(b)(2)(B).

[7] Other questions include whether Plaintiffs' counsel violated ethical rules by eliciting information from Martinez concerning McWhorter's communications with Bourne, and Neary's direct contact and interview of McWhorter in January of 2015. See Neb. Ct. R. of Prof. Cond. § 3-504.2. Based on the court's research and its review of the undisputed evidence of record, the answer to that question may require an evidentiary hearing. Since the court is able to decide the motion to disqualify on other grounds, this memorandum and order will not address whether Neary's conduct prior to January of 2016 was unethical.

As discussed below, the court finds the communications between McWhorter and Bourne are privileged, the privilege was not waived by the County, and under the circumstances presented, Neary and her law firm are disqualified from representing Plaintiffs.

 1. <u>Existence of Attorney-Client Privileged Communications</u>.

"[C]onfidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 601 (8th Cir. 1977). The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends," and "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

Individuals, corporations, and governmental entities can assert the attorney-client privilege. To secure the public's interest in open and honest government, the privilege is somewhat limited when applied to governmental entities. However, when faced with a civil lawsuit pursued by a private litigant, the governmental entity can assert the attorney-client privilege. Ross v. City of Memphis, 423 F.3d 596, 601 (6th Cir. 2005) (collecting cases). <u>See</u>, <u>e.g.</u>, Crutcher-Sanchez, 2011 WL 612061, at *7. "[T]he existence of a governmental privilege in the civil context is sufficiently entrenched that parties seeking to prevent application of the privilege in other areas, such as grand jury proceedings, have conceded its applicability in the civil context." Ross, 423 F.3d at 601; <u>see also</u> The Privilege for a Governmental Client, Restatement (Third) of the Law Governing Lawyers § 74 (2000).

For the attorney-client privilege to be applicable, "the parties to the communication in question must bear the relationship of attorney and client," and "the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." Diversified Indus., 572 F.2d at 602. The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996). In fact, "[t]he attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." In re BankAmerica Corp. Sec. Litig., 270 F.3d 639, 641 (8th Cir.2001). Deciding if specific statements are privileged is a mixed question of law and fact. See Diversified Indus., 572 F.2d at 596; Ross, 423 F.3d at 600.

As an entity, a county acts through the conduct of the County Board, the elected and appointed officials, and its employees. As with any entity, when deciding if communications with a county are privileged, the court considers whether (1) the communication was made for the purpose of securing legal advice; (2) the employee who made the communication did so at the direction of her superior; (3) the superior was making the request to obtain legal advice for the entity; (4) the subject matter of the communication is within the scope of the employees' duties; and (5) the communications between the employee and the attorney were not disseminated beyond those persons who, because of the entity's structure, needed to know its contents. Diversified Indus., 572 F.2d at 609.

Based on the evidence of record, McWhorter contacted Bourne on behalf of the Antelope County Board. (Filing No. 55-1, at CM/ECF p. 2, ¶ 9, ("My Board has asked me to call and verify some stuff with you.")). She requested advice concerning the

13

County's potential liability, and the respective rights and responsibilities of McWhorter and Mueller during the transition to a new County Assessor. The subject of McWhorter's request was clearly within the scope of carrying out her duties as the outgoing County Assessor. Bourne, in her capacity as an attorney, responded to McWhorter's questions by providing legal advice to the County. And the County itself never disseminated the advice provided by Bourne to anyone, and it never approved of McWhorter doing so. ([Filing No. 55-1, at CM/ECF p. 2, ¶ 9-11](#)). The communications between the County, acting by and through McWhorter, and Bourne are protected by the attorney-client privilege. See, e.g., [Crutcher-Sanchez, No. 8:09CV288, 2011 WL 612061, at *7](#) (holding the County met its burden of showing attorney communications were privileged where the County presented evidence that it retained the attorney to gather relevant information, form opinions, and advise the County about threatened civil litigation).

    2.    <u>Waiver of the County's Privilege</u>.

McWhorter disclosed her communications with Bourne, first to Martinez and then to Neary. Plaintiffs claim she waived the County's privilege by doing so.

As to the communications between McWhorter and Bourne, the attorney-client privilege belongs to the County, not McWhorter as an individual. The power to waive the County's privilege rests with the County: McWhorter's disclosure cannot operate to waive the County's privilege unless she was authorized by the County to make that disclosure. [Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348-49 (1985)](#) (explaining waiver of a corporation's privilege "must necessarily be undertaken by individuals empowered to act on behalf of the corporation").

The County never authorized McWhorter to disclose the content of her discussions with Bourne. ([Filing No. 33-2](#)). Moreover, when McWhorter spoke with Neary, and

14

perhaps when she spoke to Martinez as well, McWhorter was no longer the County Assessor. She could neither speak for the County nor decide to waive the privilege on behalf of the County. Since the County never authorized McWhorter to waive its privilege, the County's communications with Bourne, and the legal advice provided during those communications, remains privileged. Chen, 99 F.3d at 1502 (holding the privilege remained intact, despite the former employee's disclosure of privileged information, where there was no evidence former employee had authority to waive privilege). Those communications cannot be received as evidence at trial over the County's objection.

3. Disqualification.

Having concluded attorney-client privileged information was divulged to Plaintiffs' counsel without the County's consent, the court must now decide whether disqualification is the appropriate remedy. The court may either disqualify counsel or exclude testimony relating to the attorney-client communications. See, e.g., W. T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d Cir. 1976) ("[V]iolation of professional ethics does not in any event automatically result in disqualification of counsel."); Insituform of North America, Inc. v. Midwest Pipeliners, Inc., 139 F.R.D. 622, 624 (S.D. Ohio 1991) ("If a court may disqualify an attorney for conduct in violation of the Code of Professional Responsibility and thereby deny a client's choice of counsel, it may impose the lesser sanction of excluding evidence gathered in violation of the Code.").

"Disqualification is not warranted where an attorney's conduct is not likely to have elicited privileged information." Gifford, 723 F. Supp. 2d at 1117. But where, as in this case, there is proof (or at the very least, a strong likelihood) that privileged and confidential information was disclosed, disqualification may be required. Id. at 1117-18; see also Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir.

15

1979) (explaining disqualification has been ordered in essentially two kinds of cases: (1) where an attorney's conflict of interests undermines the court's confidence in vigorous representation, or more commonly (2) where the attorney is at least potentially in a position to use privileged information against the opposing party). To determine the appropriate sanction, the court must balance the clients' interest in being represented by their chosen counsel against "(a) the likelihood that the ethics violation will prejudice the proceeding, (b) the extent to which the violation undermined the integrity of the judicial process and (c) the effect the violation has on the attorney-client privilege." Faison v. Thornton, 863 F. Supp. 1204 (D. Nev. 1993).

The "pivotal question" is whether the attorney likely gathered the opposing party's privileged information. Gifford, 723 F. Supp. 2d at 1117-18. Where contacts with an opposing party's employee elicits privileged information, the attorney knew or should have known the employee was heavily exposed to privileged information, the employee discloses privileged information to counsel, and counsel retains the privileged information received over the opposing party's objection, counsel has "risked creating the appearance of impropriety." Id. at 119. Having disregarded that risk and ignoring the rules protecting against the disclosure of privileged and confidential material, counsel cannot then ask the court, the public, and the opposing party to ignore that conduct. Rather, counsel must be disqualified. Id. at 1117-18; see also Ag Gro Services Co. v. Sophia Land Co., Inc., 8 F. Supp. 2d 495, 498–99 (D. Md. 1997) (holding that while there is no absolute prohibition against an attorney speaking with an adverse party's former employee, including those who had access to privileged information, by doing so, counsel assumed the risk that an adversary's privilege will be violated and disqualification will be necessary); SAE Civil Const., 1996 WL 148521, at *2 (holding disqualification is necessary when the attorney hires an opposing corporate party's former president who possesses a wealth of information about the matter at issue, some of which is confidential—due to the natural tendency and risk that the former employee

will reveal privileged attorney-client communications); MMR/Wallace Power & Indus. v. Thames Associates, 764 F. Supp. 712 (D.Conn.1991) (holding that even though the employee initiated the contact, the general contractor's counsel was disqualified because the subcontractor's former employee had confidential information pertaining to the subcontractor's trial preparation and strategy and disclosed such information to the contractor's attorney, and that attorney's continued representation of contractor posed a threat of tainting all further proceedings in case); University Patents, Inc. v. Kligman, 737 F.Supp. 325, 329 (E.D.Pa.1990) (disqualifying counsel where, instead of informing the university's counsel of his intent to talk with university employees or seeking leave of court to do so, counsel proceeded with interviews unilaterally and without regard for the potential legal and ethical ramifications); Papanicolaou v. Chase Manhattan Bank, 720 F.Supp. 1080, 1085-87 (S.D.N.Y.1989) (stating ethical rules clearly place a responsibility on the attorney to avoid contacts that may result in the disclosure of privileged information, and the defense attorney who discussed the merits of the lawsuit with Plaintiff for one and one-half hours without the presence of Plaintiff's counsel violated the ethical rules such that disqualification was necessary—even if, as counsel agued, the information received was not useful and Plaintiff would soon have to reveal it anyway).

Upon review of the case law, when deciding if an attorney must be disqualified because he or she received the opposing party's privileged information through witness contacts, the court considers whether the attorney (1) knew or should have known the person contacted possessed privileged information; (2) received the opposing party's privileged information through active and purposeful discussions with the witness (as opposed to the mere inadvertent disclosure of documents);[8] (3) took measures to avoid

---

[8]A lawyer communicating with a nonclient may not seek to obtain information that the lawyer reasonably should know the nonclient may not reveal without violating a duty of confidentiality to another imposed by law. Restatement (Third) of the Law Governing Lawyers § 102 (2000).

17

receiving privileged information when conferring with witnesses;[9] and (4) promptly advised opposing counsel if and when privileged information was received and then pursued a course to preserve the opposing party's privilege and rectify the situation. In addition, the court should consider whether the attorney has or intends to use the improperly received information during case preparation, negotiations, or trial. And when ethical requirements are uncertain, a prudent attorney provides notice to opposing counsel and, if necessary, the court. Cagguila v. Wyeth Labs., Inc., 127 F.R.D. 653 (E.D.Pa.1989).

Applying these principles to the record before the court, the court finds that in January of 2015, neither Martinez nor McWhorter disclosed to Neary the identity of the person McWhorter spoke to at NIMRA. So at that point, it may not have been clear to Neary that McWhorter received advice from an attorney associated with NIMRA. Absent communications with an attorney, the attorney-client privilege is not implicated. And under those circumstances, Neary may not have known she was asking either Martinez or McWhorter to reveal privileged communications when posing questions about the NIMRA conversation.

But in January 2016, McWhorter disclosed the NIMRA source as Bourne. At that point, Neary knew McWhorter's communications with Bourne were privileged. Rather than halting any further inquiry about the privileged conversation, Plaintiffs' counsel continued to discuss the matter with McWhorter, and then pursued discovery and listed witnesses with the intent of using the privileged communications at trial. She promptly notified Bourne of the conversation, but her intent was not to limit the harm from disclosure. Instead, Plaintiffs' counsel advised Bourne that Defendant may not retain counsel of its choosing: Bourne may need to withdraw because she will likely be a

---

[9] "A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted . . . ." Ne. R. Prof. Cond. § 3-504.2 (comment 3).

18

witness for Plaintiffs. Even after the privilege issues were fully briefed on Defendant's motion to disqualify, Plaintiffs' counsel and her firm steadfastly insisted they were entitled to use the privileged communications between Bourne and McWhorter at trial, rejecting Defendant's offer to discuss moving forward with current counsel provided using the privileged information and the attorney witnesses was withdrawn from Plaintiffs' trial strategy.

In the end, "wrongly obtained knowledge 'can never be erased from [counsel's] mind,'" ([Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 755 (D. Md. 1997)](#)), and the benefits derived from knowing that information will "continue to provide the [Plaintiffs'] counsel with an unfair advantage and taint [the] proceedings. . . ." [Potash, 1993 WL 543013, at *16](#). "Discovery was hardly intended to enable a learned profession to perform its functions on wits borrowed from the adversary." [SAE Civil Const., 1996 WL 148521, at *3](#) (quoting [Hickman v. Taylor, 329 U.S. 495, 516 (1947)](#) (Jackson, J., concurring)). Accordingly, the information regarding the communications between McWhorter and Bourne are not discoverable, the information must be excluded from this case, and Plaintiffs' counsel and her law firm must be disqualified.

Accordingly,

IT IS ORDERED:

1) Defendants' motion to disqualify, ([filing no. 31](#)), is granted, and

    a. On or before July 5, 2016, Plaintiffs shall either: (a) obtain the services of counsel and have that attorney file an appearance in this case; or (b) file a statement notifying the court of their intent to litigate this case without the assistance of counsel. The failure to do so may result in a dismissal of the claims by the non-complying Plaintiff without further notice.

        b.        Plaintiffs' disqualified counsel shall promptly mail a copy of this order to Plaintiffs, and file a certificate of service stating the date and the manner of service, and the name and address served.

2) Plaintiffs' motions to file under seal, (filing nos. 36 and 51), are granted.

3) Plaintiffs' motion to compel, (filing no. 50), is denied without prejudice to reassertion, through new counsel, as to those discovery requests not resolved by the holdings and reasoning within this order.

4) The motion to stay, (filing no. 34), and Defendants' motion to compel, (filing no. 43), are granted as stated on the record, (filing no. 61).

June 13, 2016.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.